### KERNAN v. ANDRUS et al.

(Third Division.  Valdez.  January 27, 1918.)

No. 926.

**I. Waters and Water Courses** ⊂⇒16, 34—**Mines and Minerals.**

The common-law doctrine of riparian rights does not apply in Alaska; but the waters of nonnavigable streams on the

public lands are subject to appropriation for mining, agricultural, and other useful purposes, and the locator of a mining claim on such a stream acquires no riparian rights by reason of such location as against a prior appropriator. He is, however, entitled to the continued use of so much water as he has been diverting and applying to a beneficial use as against a subsequent appropriator; there being no law of the territory requiring posting or recording of the notices of such appropriation to give him a vested right thereto.

**2. Waters and Water Courses ⊂⇒12—Mines and Minerals.**

The mere location of a placer mine crossed by a nonnavigable stream, in Alaska, does not vest the locator with such riparian ownership in the waters as to compel a court of equity to enjoin their subsequent appropriation and diversion for mining purposes.

The following sketch shows the relative position of mining claims owned by plaintiff and defendants; plaintiff's claims being shaded, to distinguish them from those claimed by the defendants:

Sketch Map.
Showing relative position of
mining claims in controversy

The plaintiff was one of the original discoverers of gold upon Chititu creek, in March, 1902, and located in his own name and has ever since owned and held claim No. 3 on Chititu, claim No. 11 on Chititu, claim No. 1 on Rex, and claim No. 5 on White creek. The plaintiff has also since that time acquired and now claims to own two bench claims on the right limit of said Chititu No. 11 and two bench claims on the left limit thereof. The other claims on said three streams, as shown by the above sketch, were owned by various individuals up to about the year 1906, when the defendant John E. Andrus acquired the same by purchase. This does not include No. 10 Chititu and possibly one or two claims on Rex creek, of which the said John E. Andrus did not become the owner until some years afterwards, but at the time of the commencement of this suit is conceded to have been the owner of all of said claims, except the ones owned by the plaintiff, Kernan.

The plaintiff, Kernan, about the year 1905 brought in a hydraulic outfit, the first one to be introduced on said creeks, and diverted the waters of Rex creek by placing a dam upon No. 4 Rex, then owned by Koppus, Brown, and Griffith, and constructed a flume and pipe line over and across said claims Nos. 4, 3, and 2 on Rex to his own ground on No. 1 Rex, which he began hydraulicking by means of said waters. He continued doing so until about the year, 1911.

About 1906 the defendant Andrus brought in a hydraulic plant on said creeks and operated on lower Chititu, and afterwards, about the year 1911, on Rex creek. During the summer of that year, during his operations, he destroyed the ditch and flume line of plaintiff across Rex No. 4 and No. 3 by piping the ground from under said ditch and flume. Plaintiff claims that this was done wantonly and without being necessary or proper in the working of said claims Nos. 3 and 4 on Rex, while the defendants claim it was done in the necessary working of that ground in their hydraulic operations. At any rate, Kernan ceased operating by means of the waters of Rex creek and let lays on No. 1 Rex and No. 11 Chititu until the year 1915, in the spring of which year he let a lay to one Charles Schlosser and furnished him with heavy pipe and other materials, the said Schlosser diverting the waters of White creek by placing a diversion

dam on placer claim No. 3 White, owned by the defendant Andrus. The evidence shows that this was probably done by the consent or acquiescence of the defendants. Said Schlosser brought the waters of said White creek by laying flume and pipe across claims Nos. 3, 2 and 1 White creek, to No. 11 Chititu (owned by plaintiff) and the bench claims on the left limit thereof, also owned by plaintiff and operated that year with no great success.

In November, 1915, the plaintiff, Kernan, caused a notice in writing to be posted on the bank of said White creek, on his own claims, to wit, on No. 5 White, claiming to appropriate 2,600 inches of the waters of said stream (being about all the waters normally flowing therein), and early the following spring brought a considerable quantity of new pipe, some as high as 24 inches in diameter, from Seattle to the same ground (same being situated about 200 miles north and east from the town of Cordova, on Cordova Bay), diverting the waters of said White creek at said point on No. 5, laying his ditch, flume, and pipe line over and across claims Nos. 4, 3, 2, and 1 (belonging to the defendant Andrus), and operated and actually used the same in his hydraulic operations during that season upon his mining claims, No. 1 Rex, No. 11 Chititu, and the bench claims adjoining said No. 11 Chititu. He renewed the same operations in May, 1917, when defendants cut his ditch and let the waters thereof flow out, so as to deprive the plaintiff of the use thereof, under the claim of right to use said waters on their mining claims, Nos. 4, 3, 2, and 1 White.

Donohoe & Dimond, of Valdez, for plaintiff.

L. V. Ray and M. D. Leehey, both of Seward, for defendants.

BROWN, District Judge. The plaintiff brought this action to enjoin defendants from interfering with the said ditch, flume, and pipe line, or obstructing or diverting the waters flowing through the same. The defendants allege generally the right to the exclusive use and ownership of all of the waters of said Chititu, Rex, and White creeks, by reasons of their appropriation and use thereof upon the said mining claims owned by them.

The evidence shows that since about the year 1906 the defendants have conducted hydraulic mining operations upon their claims, from about 4 to 10, Chititu, and claims 2 to 8, inclusive, on Rex; also upon the Carvey bench on the left limit of claims 2 and 3 on Rex.

There was some testimony offered and received, tending to show the local custom of miners on said three creeks, with reference to the use of the waters thereof, as it reached each individual claim, and also as to the carrying of ditch, flume, and pipe lines, telephone lines, etc., across the claims of third persons; but I am unable to see that the testimony with reference to custom throws much, if any, light upon the controversy here. It narrows down to a very simple question: Was the plaintiff the prior appropriator of the waters of White creek, by virtue of the diversion and use thereof by his layman, Schlosser, in 1915, followed by plaintiff's notice of location of 2,600 inches of the waters thereof, posted on the ground in November, 1915, and also followed up by the actual diversion thereof in his ditch, flume, and pipe line in the spring of 1916, and his putting the same to the beneficial use of placer mining on his claims No. 1 Rex and No. 11 Chititu, and the bench claims adjoining, in the year 1916?

The defendants claim they are entitled to the use of said waters of White creek on the said claims, Nos. 1, 2, 3, and 4 White, and they attempt to establish the fact that they had diverted the waters of said creek in mining said ground, or some portions thereof.

The only evidence of the actual use of the waters of said White creek on any of the said four claims now owned by defendant was in the year 1903. Before the said claims were owned by defendant, a lay was let on No. 3 White in 1903 to one Mitchell, who put up a few sluice boxes and shoveled in the dirt, just erecting enough of a dam or obstruction to throw the water into the sluice boxes. After working two or three weeks, they found that there was no sufficient pay, and they threw up the lay and abandoned it. There is no evidence of any work having been done on one of those claims on White creek since that time, and there is no evidence that the same have any value for mining purposes. I think the contrary is shown by the evidence in this case, at least, that they have no value for mining purposes. The

fact that they have been held for 14 years and not a dollar has ever been taken out of them should be convincing evidence of their lack of value.

There is considerable evidence in the case on the part of the defendant tending to show that the plaintiff recognized the property right of the defendant Andrus in and to the waters of said White creek, for use upon his placer claims Nos. 1, 2, 3 and 4 White creek, notwithstanding that the said Kernan had actually used the waters of said White creek for many years upon his ground No. 1 Rex and No. 11 Chititu. The plaintiff denies that he ever recognized the prior right of said Andrus to the waters of said White creek.

There is considerable contradictory testimony with reference to this question and being in the nature of admissions, ought to be viewed with caution. It is more likely that none of the parties felt thoroughly satisfied as to the exact legal status of the matter, and up until the actual diversion of the water by Kernan or his layman in 1915 the same had not been appropriated by any one, or put to any beneficial use, except by the plaintiff, Kernan, himself on his claims No. 1 Rex and No. 11 Chititu, except as above noted for a little prospecting in the year 1903 on No. 3 White.

It would not seem as though the legal right of either party could be fixed or established by claims made or opinions expressed by either party, as the right depends upon the prior appropriation, actual diversion, and application to a beneficial use.

Both parties have brought in a number of side issues and cited a good deal of law on questions that seem to me are not necessary to be considered in this case. The issue is a very simple one, and I think this court is controlled by the decision of the Circuit Court of Appeals for the Ninth Circuit in the case of Van Dyke v. Midnight Sun Mining & Ditch Co., 177 Fed. 85, 100 C. C. A. 503. The second section of the syllabus reads as follows:

"The common-law doctrine of riparian rights does not apply to the Seward Peninsula in Alaska; but the waters of nonnavigable streams on public lands are subject to appropriation for mining, agricultural, and other useful purposes, and the locator of a mining claim on such a stream acquires no riparian rights by reason of such location as against a prior appropriator. He is, however, entitled to the continued use of so much water as he has been di-

verting and applying to a beneficial use as against a subsequent appropriator; there being no law of the territory requiring posting or recording of the notices of such appropriation to give him a vested right thereto."

There is no satisfactory evidence here that the locator of a mining claim on the stream, to wit, the defendant Andrus, ever appropriated the waters of White creek by diverting and applying the same to a beneficial use, as against the subsequent appropriator Kernan. See, also, the case of McFarland et al. v. Alaska Perseverance Mining Co., 3 Alaska, 308, where Judge Wickersham, after a full and able discussion of the question of water rights in Alaska, says, on page 332:

"The mere location of a placer mine crossed by a nonnavigable stream, in Alaska, does not vest the locator with such riparian ownership in the waters as to compel a court of equity to enjoin their subsequent appropriation and diversion for mining purposes. This conclusion leaves but the single question of priority of right between plaintiffs and defendant, based upon their respective appropriations of the waters of Lurvey creek, to be determined."

The true inwardness of this case seems to arise from the fact that the plaintiff and defendant Andrus, who are the only mining operators on said three streams, instead of getting together in a friendly and common-sense way, have been too much engrossed in insisting upon their own supposed rights. If they proceed in this attitude toward each other, they will probably both be successful in hampering and obstructing and causing each other great inconvenience, delay, and expense. It is axiomatic that two bodies cannot occupy the same space at the same time. It seems apparent that one is bent on forcing the other in one matter in order to gain a supposed advantage in another matter. Kernan's ownership of claims No. 1 Rex and No. 11 Chititu is no doubt strategic, and it is quite evident, from the testimony and a little reading between the lines, that the defendant Andrus is more concerned in taking a head of water from Rex or Chititu on Kernan's ground, No. 1 Rex or No. 11 Chititu (or what amounts to the same thing, taking a head above Rex gulch, further up, and carrying it across Kernan's said two claims), in order that he may get a pipe head to work claims Nos. 8, 9, and 10 Chititu, with a sufficient fall or pressure, than he is about the waters of White creek.

Kernan, by reason of his actual use and appropriation of said waters on his said claims, No. 1 Rex and No. 11 Chititu, is in position to prevent Andrus from doing this. The defendant Andrus has operated a large plant successfully on Chititu creek, and I think the evidence shows that he probably has at least two years' work left on claims below No. 9 Chititu. He is also operating extensively on Rex creek and the Carvey bench, using all the waters of Rex creek. He thus has two hydraulic plants in operation, one on Rex, no doubt dumping more or less débris and tailings on Kernan's claims, while he complains of Kernan dumping débris and tailings upon his claims below No. 11 Chititu. If Andrus' contention could be sustained here, he would be in a position where he could operate three hydraulic plants, and Kernan could not operate any. This much is said for the true inwardness of the situation. Of course, if each party insists upon his naked. legal rights, they can find plenty to fall out about, and interfere and obstruct each other in many ways.

In view of the situation here, I venture to make the suggestion that these parties ought to meet each other in a spirit free from personal antagonism or desire to overreach; that they ought to and could make a reasonable and satisfactory agreement as to their course of operating. I believe a fair and equitable adjustment could be arrived at by the exercise of a little forebearance and concession.

Plaintiff was permitted, over the objection of defendants, to amend his complaint and ask that commissioners be appointed to condemn a right of way for plaintiff's ditch, flume, and pipe line across the defendants' claims Nos. 1, 2, 3, and 4 White Gulch. While from the evidence produced in this case the said four claims are not shown to be of any particular value, still I take it that the defendant is entitled as a matter of right to have testimony taken on the question of value in proper condemnation proceedings, and there is some doubt, too, as to plaintiff's right to maintain that proceeding in this action, which was brought only for the purpose of enjoining the defendant from interfering with his ditch, flume, or pipe line.

The said amendment, therefore, in so far as it seeks to condemn a right of way across the said four placer claims

of defendant, will be stricken out, and the plaintiff relegated to proper proceedings to condemn said right of way. This is merely one instance where the parties may save the expense and trouble and delay of a lawsuit by agreement between themselves.

The plaintiff is entitled to the injunction prayed for. Findings and decree may be prepared accordingly.

⊕⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes